REEVES S. DYER, administrator of Elizabeth Waters, deceased,

*v.*

JOSEPH K. RILEY and EPHRAIM WATERS, executors of Ephraim Waters, deceased.

1. Where a fund directed by a will to be invested by two executors for the benefit of a legatee for life has once been properly invested, it is not, *per se*, negligence for one of the trustees to permit the other to take the actual care and custody of the securities representing it, and in such case the other trustee will not ordinarily be liable for the default of his co-trustee in not paying over the interest until he has notice of some default or misconduct on his part.

2. Where executors and trustees have been guilty of a failure to fully perform a part of their duty—*e. g.*, to especially set aside and ear-mark a portion of the assets of the estate to constitute a fund for the benefit of a tenant for life—such failure will not make one trustee liable for the failure of his co-trustee to pay over to the tenant for life the interest upon the assets in his hands.

3. Where a *cestui que trust* acquiesces for years in the failure by one of two trustees to fulfill his duty in paying over to her the interest upon a fund in his hands, and does not notify the other trustee of such failure, nor make any demand upon him in the premises, and the defaulting trustee in the meantime becomes insolvent, her administrator cannot compel the other trustee to make good the default.

Dyer v. Riley.

Heard on bill, answers and proofs.

The defendants were named executors in the last will and testament of Ephraim Waters, deceased. The will was made in April, 1866, the testator died in July, 1866, and the will was proven and letters testamentary issued to the defendants on the 8th of August, 1866. The defendants joined in an inventory of the estate, and on the 15th of October, 1867, they also joined in a final accounting, which showed a balance in their hands of $31,931.14, consisting almost wholly of promissory notes and bonds, a portion of the latter secured by mortgage.

The will contains this clause :

"I order my executor to place at interest the sum of eight thousand five hundred dollars and collect the interest on the same half yearly, and pay the said interest half yearly to my said wife Elizabeth during her natural life."

At the decease of his wife he directed that this sum of money be divided between his daughter, Mrs. Caroline Dyer, the wife of the complainant, and his son, Ephraim Waters, one of his executors. He gave other legacies amounting to $9,200, and bequeathed the residue to his son Ephraim.

The widow died May 27th, 1881, intestate. Reeves S. Dyer, the complainant and husband of Caroline Dyer, took out letters of administration upon the estate of Elizabeth Waters on the 5th of January, 1887, a little less than six years after her death, and on the 21st day of October, 1887, more than six years after her death, he filed the bill which is the foundation of the present suit. In that bill he sets out the provision for Mrs. Waters, charges the proof of the will by the defendants, and that they took upon themselves the burden of the execution of the trusts in the will contained, and filed their joint account as hereinbefore stated.

The bill then proceeds to state that the burden of administering the estate was largely assumed by Ephraim Waters, and that for a time Waters paid to his mother, Elizabeth, the interest secured to her by the terms of the will,

"but that since the year eighteen hundred and seventy the said Ephraim and the said Ephraim and Joseph executors and trustees as aforesaid, almost wholly failed to pay to the said Elizabeth Waters deceased, in her lifetime and up to the time of her death, the interest moneys so secured to her,"

and that large arrearages of interest were due her at the time of her death " by the said executors and trustees *or one of them*," and were still due and owing to the complainant as her administrator.

The bill further states that the complainant

" has sought the said executors and trustees, and especially the said Ephraim Waters, executor and trustee as aforesaid, (*who is chiefly and almost wholly to blame for the failure* in not carrying out the said trust in the said will, so in favor of your orator's decedent as aforesaid) to account for the moneys so due the said decedent in her lifetime under the said trust, and has written and caused to be written numerous letters *especially to the said Ephraim Waters*,"

asking for an account and settlement and threatening suit,

" *many of which Waters has answered, and although he, Waters, has made numerous promises and numerous appointments to meet your orator in relation thereto, he has never kept said promises or appointments,* nor have the said executors come to any account or settlement with the complainant touching the trust monies due by them;"

and charges that the said executors and trustees owed Elizabeth Waters, in her lifetime and at the time of her death, large arrearages of trust moneys; and the bill prays that Waters and Riley, executors and trustees as aforesaid, may account for and pay over to the complainant all the moneys due by them under the will of Ephraim Waters to Elizabeth Waters, in her lifetime and at the time of her death, together with interest.

The bill prays process against Ephraim Waters individually, and Ephraim Waters and Joseph K. Riley, executors and trustees.

Process of *subpœna ad respondendum* was issued on the bill and returned served as to both defendants on the 9th day of November, 1887.

No answer was filed or appearance entered by the defendant

Dyer v. Riley.

Riley, and no order or decree taken against him until years afterwards, as stated further on.

An answer was filed by Waters, a replication filed thereto, and proofs were taken and the cause brought to a hearing before a vice-chancellor, who filed his opinion on the 3d of February, 1890, as reported in *1 Dick. Ch. Rep. 484.* Under that decree an order of reference was made April 25th, 1890, to take an account of the amount due from Waters. The master reported, on the 25th of August, 1890, the sum of $3,747.90 as due from Waters to the complainant. That report was duly confirmed, and on the 7th of October, 1890, final decree was signed in favor of the complainant and against Waters for the sum last mentioned.

In the meantime, in November, 1889, before the opinion was filed, the defendant Waters failed in business and made an assignment, for the benefit of his creditors, to Norcross & Macollister, and on the 3d of June, 1890, after the interlocutory decree had been entered against Waters, and while the account for the amount due was being taken by the master, Dyer filed a supplemental bill in this cause against Waters and Riley and the assignees of Waters, in which he set out that the sum of $8,500, the principal of the trust fund in the hands of the defendants from which complainant's intestate was to receive the annual interest, and also another trust fund established by the same will, had been paid, according to the direction of the will, to the parties entitled thereto, and he claimed a preference out of the estate in the hands of the assignees for the amount which should be found due complainant by the court on the report of the master.

No relief was granted under this bill; but subsequently, on the 11th of January, 1892, Dyer presented a sworn claim to the assignees of Waters for the amount due on the decree, and received a dividend therefor.

On the 11th of April, 1890, after the opinion had been filed, complainant obtained an order upon Riley to plead, answer or demur within thirty days, and in obedience to that order the defendant Riley appeared and answered, and the cause was retried as against him.

Dyer v. Riley.

*Mr. Herbert A. Drake,* for the complainant.

*Mr. Martin P. Grey,* for the defendant Riley.

PITNEY, V. C.

Riley, by his answer and amended answer, sets up, in effect, three defences—*first,* he alleges that he never acted as trustee as contradistinguished from executor, and that part of the defence is set out thus in his answer:

"And this defendant further answering admits that the burthen of administering said estate was largely assumed by said Ephraim Waters the son of said testator one of said executors, and avers the fact to be that upon the auditing and filing of said accounts in Salem county Orphans' Court and the allowance of the same in all things by said court this defendant's co-executor said Ephraim Waters (son of said testator) took the entire charge, custody and possession of the whole surplus of the said estate remaining after the payment of the debts of said testator, and the expense of settlement of his said estate, and thenceforth since the year 1867 up to the present time has had the exclusive custody, control and management of said estate and of the moneys and property thereof."

The *second* defence is that the complainant's demand upon which he recovered against Waters was a joint demand, and that if he (Riley) was liable at all he was liable jointly with Waters, and that the presentation by the complainant to the assignee of Waters of a claim for the amount due him from Waters, upon the decree of this court, was a discharge of Waters, under the twenty-first section of the Assignment act. *Rev. p. 40.*

And, *third,* that he (Riley) was guilty of no negligence in permitting his co-trustee to take actual care and custody of the assets of the estate, and that under the circumstances of the case complainant's intestate was estopped by her conduct from calling on the defendant Riley to make good the default of her son in not paying the interest to her from year to year.

The answer, in support of this point, sets out that the defendant Waters was, at the date of the accounting and for a long time afterward, a man of reputed wealth and of business capacity, and after stating the insolvency of Waters, after having paid the

principal moneys of the trust to the parties entitled thereto, proceeds as follows:

"And this defendant avers that the above named action of said Elizabeth Waters in her lifetime, and of said Ephraim Waters and Caroline Dyer, was a full ratification and acceptance of said Ephraim Waters as sole trustee for said trust fund and for all interest that might come due thereon, and an acquiescence in his action as such sole trustee, and a discharge from any and all responsibility as trustee of the same, if any such responsibility ever existed, which this defendant denies.

"And this defendant avers that by the omission of said Elizabeth Waters in her lifetime and of said Ephraim Waters and Caroline Dyer to take any steps during the long period of twenty years having full knowledge of the facts as hereinbefore set forth and the omission of said complainant, administrator of said Elizabeth Waters since her death to enforce said supposed trust against this defendant as trustee, and against said Ephraim Waters trustee as aforesaid until he the said Ephraim Waters had become insolvent, the said Elizabeth Waters in her lifetime and the complainant since her death and said Ephraim Waters and Caroline Dyer have been guilty of gross laches and neglect, to such an extent that if said several parties or either or any of them ever had any right or equities as against this defendant as such supposed trustee as aforesaid (which this defendant denies) they and each of them have wholly abandoned and lost the same, and this defendant prays that he may have the same advantage of defence upon this ground as if he had formally pleaded the same."

The *first* ground above stated was supported by proof that at the settlement of 1867 of the accounts of the defendants as executors, the whole of the assets of the estate were at once placed in the hands of Ephraim Waters, by the request of the widow, the complainant's intestate, and that Waters continued to act as trustee from that time on, and that he was recognized as sole trustee by Mrs. Dyer, and that she, from the year 1870 on, demanded and received from her son only about $50 a year, and that she never made any demand whatever upon the defendant Riley for any arrears of interest; and a forcible argument was made in support of this point, based upon the distinction between the function of an executor and that of a trustee, as defined by the chief-justice, speaking for the court of errors and appeals, in the case of *Pitney* v. *Everson, 15 Stew. Eq. 361.*

But I have not found it necessary to consider either this or the second of the defences, since I think that the defendant must

succeeed on the last point taken, viz., the absence of negligence on the part of himself and the conduct and laches of the intestate, in her lifetime, and her next of kin since her death.

As before remarked, it appears that although from the year 1870 on until her death, a period of eleven years, the intestate received only about $50 a year from her son (excepting the last two or three years of her life, when she was imbecile and he paid the cost of her support), yet she never made any demand upon Riley to execute the trust and to pay her any interest, but looked solely to her son and indicated by her conduct that she was satisfied to look to him alone.  Then after her death her next of kin failed to take out letters of administration for almost six years after her death, and neglected to file their bill until more than six years after her death, and in that bill made but very faint, if any, charge against the defendant Riley.  An examination of the opinion in *Dyer* v. *Waters, 1 Dick. Ch. Rep. 484* (at *p. 487*), shows that the court there had difficulty in meeting this allegation of laches and lapse of time occurring after the death of the intestate, and did so only on the ground that there were negotiations and attempts to settle going on continuously between the next of kin and Waters.  The court there (at *p. 489*) says : " The principle upon which courts of equity refuse to enforce stale claims, in cases where the statute of limitations does not apply either directly or by analogy, is that, considering all the circumstances, it would be inequitable to do so by reason of the danger of doing injustice to the defendant, because, for instance, the defendant, by reason of the delay, has changed his position irretrievably, or lost some advantage he was entitled to keep, or that evidence has been lost or facts obscured by the lapse of time.  *Story Eq. Jur.* § *529.*"

None of the reasons there stated for holding Waters liable, notwithstanding the lapse of time, apply to the defendant Riley. The circumstances of the case render it reasonably certain that if he had been called upon, either in the lifetime of the intestate or within a reasonable time after her death, to account for these arrears of interest, and had been informed that he was to be held liable for Waters' default in that behalf, he would have been

able to have saved himself from Waters, who was then amply able to pay, as in fact he did save himself as to the principal of the two legacies put in trust, viz., that for $8,500 for the widow for life and the one for $6,700 for Mrs. Dyer for life.

Further, the evidence shows that neither Mrs. Waters nor her daughter, Mrs. Dyer, with whom she lived, nor her husband, the complainant, nor any other person, ever notified the defendant Riley that his co-trustee was in any respect failing to perform the trust, or called upon him to perform any duty in respect to it. Mrs. Waters was never a woman of any business capacity, and a few years after the settlement of the estate her memory and faculties began to fail, slowly and almost imperceptibly at first, but steadily, until, about the year 1877 or 1878, she became imbecile. Up to this time she had lived mainly with Mrs. Dyer, but the health of the latter having failed, she was put by Mr. Waters in the care of a cousin, and remained there until she died.

The proofs indicate a settlement between mother and son for arrears of interest up to April, 1870. From that time on, and during her residence with Mrs. Dyer, he paid her only about $50 a year—probably not so much—her habits and dress being very simple and her wants but trifling. All this was known to Mrs. Dyer, who, with defendant Waters, was her sole next of kin, and also to her children and to the complainant.

Now, it seems to me that Mrs. Waters, so long and so far as she was *compos mentis*, was estopped, by her conduct and failure to notify Riley of her son's default or to make any demand upon him in that behalf, from seeking to charge him for such default, and that, so far as she was not *sui generis*, her next of kin are equally estopped. They knew of her condition and the default of her son, and they should have sought her consent to interfere in her behalf to enforce her rights, and, failing in that, should have procured a commission of lunacy and a legal guardianship of her affairs. It seems to me that Mr. Riley, having placed these assets in the hands of his co-trustee, by the request of the intestate and with the knowledge and acquiescence of all parties interested, and the assets, or enough of them for that pur-

pose, being, as appears by the inventory, already invested in securities proper to be held as investments, and having heard no complaint, from any of the persons interested, of any default on Waters' part, was fully justified in believing, as he did in fact believe, that the trust was being properly performed.

With regard to the latter part of Mrs. Waters' life, covering the period of her complete imbecility, the master's report shows, and it was admitted at the hearing, that she was supported by her son, and that he paid for such support and for her funeral expenses and physician's bill, the sum of $1,600. The net income of the trust fund, during that period, was about $450 a year. So that there was practically no default on the part of Waters for the last three or four years of her life and during the time she may be properly said to have become entirely imbecile.

The demand, then, is for arrears of interest which became due while she was living with Mr. and Mrs. Dyer, before she had become entirely incapacitated and while she had a will and wishes of her own, and they—the daughter and son-in-law— were fully aware of the default.

And it should not be overlooked that the demand here sought to be enforced is not, strictly speaking, founded on a breach of trust. In this respect it stands in clear distinction from cases of misappropriation or misinvestment of the principal of the funds, as will be observed upon an examination of the authorities. The defendant Waters, as before observed, had in hand sufficient securities of a proper character, from his father's estate, to establish his mother's fund and the other fund provided for by the will, without any change or new investment except as they should be paid from time to time. There is no proof that he ever improperly dealt with any of them. All that appears is that he never set apart any particular securities for this particular one of the two funds to be established. The precise ground upon which the decree went against him was that he failed to pay to his mother the interest which he presumably collected and received for her. Now, there was no negligence on Riley's part, as it seems to me, in permitting his co-trustee to do

this work without his personal interference in each case, so long as he had reason to suppose that he was actually doing it in the ordinary course of business; and he had a right to so suppose from the fact that no complaint was made to, or notice to the contrary given him.

It seems to me, therefore, that as often as Waters made default in paying his mother and she consciously acquiesced in it, she so far waived her right to call upon Riley to make it good. She trusted her son and made him her debtor. And the same rule ought to apply to the next of kin who had her in care and charge during the period of her incapacity, whenever that commenced.

It is well settled that the tenant for life of a fund under such circumstances is debarred from relief. It is so expressly held by Lord Eldon in the leading case of *Brice* v. *Stokes, 11 Ves. 319.* There, Mrs. Brice, the complainant, was entitled to the interest of a fund for her lifetime, and her husband knowingly permitted the fund to remain in the hands of one trustee and accepted interest from him, but that trustee failed to pay to Brice all the interest, and died insolvent. The object of the bill was to charge the surviving trustees, not only with the principal money which had been lost, but also with the arrears of interest which were due to Brice, and Lord Eldon held the surviving trustees liable for the principal money, but not for the arrears of interest due to Brice. The case is stronger than this, because it was proven that one of the surviving trustees knew that the money was not properly invested by the defaulting trustee.

The same principle was applied in the case of *Walker* v. *Shore, 19 Ves. 386.* There, a married woman was entitled to the income of a fund to be derived from the sale of certain landed property, which was devised in trust with power of sale and investment, with directions to pay the married woman for life, and at her death to go to her children. She permitted the trustees to hold the property without sale for many years, because it was advancing in price, and when it was sold at a great advance she demanded out of the gross proceeds a sum of money

which would be equal to the interest which would have accrued on the value of the property if it had been sold at the first moment when the trustees might have sold it. It was held that so long as she acquiesced in the non-sale she was not entitled to interest.

But the authorities go further with regard to the interest or income of a fund received by one trustee, and follow the rule laid down in the leading case of *Townley* v. *Sherborne, Sir J. Bridg. 35; 2 White & T. Lead. Cas. *858.*

The principle of the cases is that if the estate be once properly invested, the securities may be lodged in the hands of one trustee and he be permitted to collect the interest and pay it over to the tenant for life, and the other trustee will not be liable for default in paying over the interest until he has notice of some default or misconduct on the part of his co-trustee. This rule is based upon the circumstance that it is practically impossible for both trustees to attend in person to the collection of the rents or interest.

The case principally relied upon at the argument by the complainant was *Burrows* v. *Walls, 5 De G., M. & G. 233,* which, it must be confessed, is, in some respects, similar to the one before the court, but in the very point in controversy is quite distinguishable from it; and it is to be observed of it *in limine* that the decision of Vice-Chancellor Wood (afterwards Lord Hatherley), who first heard the cause, was in favor of the trustee there sought to be charged, and that his ruling was reversed, on appeal, by Lord Cranworth, upon grounds which seem to me very narrow and by no means satisfactory, and as between the strength of the two names in this country the authority of Lord Hatherley is quite as great as that of Lord Cranworth. There, a tenant for life, a married woman, acquiesced from year to year in the possession by one of several trustees of a fund and in the non-investment of it by him. She died, and her children, who were the tenants in remainder and had been infants during the greater part of the continued breach of trust, brought suit against the other trustees to recover the fund, the one trustee having it in possession having become bankrupt and there being a total loss.

The suit was to recover the principal of the fund, with interest, from the death of the mother, and not, as here, for any interest which had accrued to her in her lifetime. This distinction is radical.

The single element of negligence on the part of Mr. Riley which counsel for the complainant was able to point out, and upon which alone he relied, was the fact that he did not insist upon having certain specific securities chosen out of the assets of the testator and set apart and ear-marked as representing the fund of $8,500 provided by the will for Mrs. Dyer's support. Admitting, for argument's sake, that this failure amounted to negligence, there still remains a serious difficulty in complainant's way, and that is, that the default of the acting trustee here relied upon was not the natural or necessary result of such neglect. The condition in which the assets were left did not facilitate the son's default. If the assets had been properly ear-marked it would still have been quite easy for him to fail to pay over the interest to his mother. The same is true as to his dealing with the principal. If the fund had been invested in the joint names of the trustees it would still have been in the power of the one who had their possession to misappropriate them.

For these reasons I am of the opinion that the complainant's case fails, and the bill must be dismissed as to him, with costs.